IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| TAMRA N. ROBINSON, | ) | |
|---|---|---|
| | ) | Civ. No: 14-1205 RGA |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| FIRST STATE COMMUNITY, | ) | |
| ACTION AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF TAMRA ROBINSON'S OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT**

**COOCH AND TAYLOR, P.A.**

*/s/ G. Kevin Fasic*
G. Kevin Fasic (#3496)
Katherine R. Witherspoon (#3348)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
kfasic@coochtaylor.com- Email
(302) 984-3815- Telephone
(302) 984-3939- Facsimile

*Attorneys for Plaintiff*

Dated: July 29, 2016

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………………………………………………………..ii

**NATURE AND STAGE OF THE PROCEEDINGS**…………………………………………..1

**STATEMENT OF FACTS**……………………………………………………………………...2

**SUMMARY OF THE ARGUMENT**………………………………………………………….6

**STANDARD OF REVIEW**…………………………………………………………………...7

**ARGUMENT**………………………………………………………………………………....8

        A.      First State regarded Ms. Robinson as having a disability........................................8

        B.      Ms. Robinson does in fact suffer from a disability..................................................9

        C.      Ms. Robinson satisfies the elements of a claim under the ADA for failure of First State to Reasonably Accommodate................................................................9

**CONCLUSION**……………………………………………………………………..13

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..............................................................................7

*Lamont v. New Jersey*, 637 F.3d 177 (3d Cir. 2011).....................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).....................................7

*Scott v. Harris*, 550 U.S. 372 (2007).............................................................................................7

*Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180 (3d Cir. 1999).......................................................8

*Williams v. Borough of West Chester, Pa.*, 891 F.2d 458 (3d Cir. 1989).......................................7

*Williams v. Philadelphia Housing Auth. Police Dept.*, 380 F.3d 751 (3d Cir. 2004).............8, 9, 12

*Wishkin v. Potter*, 476 F.3d 180 (3d Cir. 2007).............................................................................7

**Statutes**

42 U.S.C. §§ 12101, *et seq.*……………………………………………………………......1

**Rules**

Fed. R. Civ. P. 56(a)……………………………………………………………………...7

**Regulations**

29 C.F.R. § 1630.2(1)......................................................................................................................8

**Other**

Third Circuit Model Jury Instructions (last updated May 2016) § 9.1.3......................................10

EEOC Fact Sheet, What You Should Know about the EEOC and Enforcement of
    the Americans with Disabilities Act...............................................................................9, 10

# NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Tamra Robinson ("Ms. Robinson") was terminated by her employer, First State Community Action Agency ("First State") on February 3, 2012, and filed a Charge of Discrimination on or about May 1, 2012. She received a Notice of Right to Sue dated June 27, 2014. Her *pro se* complaint was filed on September 17, 2014. All administrative requirements for the filing of the instant action have been satisfied. Ms. Robinson asserts claims under the American's With Disabilities Act, as amended, 42 U.S.C §§ 12101, *et seq.* (the "ADA").

Counsel for Ms. Robinson became involved in this case at the end of July, 2015. The parties have completed discovery, which closed on June 30, 2016, and had scheduled mediation for August 11, 2016. Settlement proposals were exchanged, but First State determined, after the close of discovery, that it no longer had an interest in mediation. The original Scheduling Order has been amended, with case dispositive motions due by July 29, 2016, a pretrial conference on November 18, 2016, and a three-day jury trial scheduled to commence on December 5, 2016.

First State filed a Motion for Summary Judgment on Tuesday, July 26, 2016. Ms. Robinson hereby respectfully requests oral argument on the competing motions for summary judgment. Ms. Robinson's motion seeks summary judgment as to liability, and, should this motion be granted, respectfully requests a damages inquisition be scheduled to ascertain the appropriate damage award.

**STATEMENT OF THE FACTS**

Ms. Robinson was employed by First State from October 2009 until February 3, 2012. She was initially hired as an IDA Counsellor, assisting low to moderate income families to achieve economic self-sufficiency. After approximately a year she transitioned to the position of Default or Housing Counsellor, a position she was not hired for and had no experience performing. Under her initial supervisor, Ponciano Allen, she experienced no problems with her job performance.[1] Her only documented discipline actions were an unsigned "Employee Warning Report" in July 2011, and a 3-day suspension in August 2011.[2]

In September 2011 First State hired Karen Garrett ("Ms. Garrett") as the Program Manager of the Housing Department. She thereby became Ms. Robinson's supervisor. Ms. Garrett assumed that, because Ms. Robinson worked in her Department, that she was fully trained to perform the duties of a Housing Counsellor. However, despite experiencing alleged problems with Ms. Robinson's performance, Ms. Garrett never checked to see if she had received the necessary certifications to perform the job.[3] The working relationship became strained, and, at some point in November or December, 2011, Ms. Garrett asked Ms. Robinson if she had a disability. The recollection as to the specific wording of this inquiry differs slightly, but the impact is the same: Ms. Garrett felt that Ms. Robinson either did not know what she was

---

[1] See Exhibit A, Deposition Transcript of Tamra Robinson, at pp. 19-32.

[2] *Id.*, pp. 47-51.

[3] See Exhibit B, Deposition Transcript of Karen Garrett, at pp. 43-44. A general description of the duties and required certifications of a Housing Counsellor appears in this transcript at pp. 20-44.

doing, or had a disability (dyslexia).[4]  Ms. Robinson was not, at that time, aware she had a problem with dyslexia.[5]

Shortly thereafter Ms. Robinson obtained a Psychological Evaluation from Phyllis H. Parker, Ph.D., in an effort to rule out dyslexia.  The report confirmed that "characteristics of dyslexia are noted" in a number of areas, and that the "characteristics range from mild to significant".[6]  The report is dated December 19, 2011, and was provided to Ms. Garrett by Ms. Robinson shortly after receipt.[7]

Despite the fact that it was Ms. Garrett who suggested that Ms. Robinson might be dyslexic, the report from Dr. Parker was completely disregarded and ignored by her, and by First State.  Ms. Garrett conducted her own, unqualified assessment of the report and determined that: "I did not find that, in my opinion, that this psychological test had anything to do with dyslexia."[8]  Ms. Garrett is neither a psychiatrist nor a psychologist, and is therefore wholly unqualified to make any such assessment.[9]  She never contacted Dr. Parker to discuss the report, and her assessment was based, instead, on having cared for foster children.[10]  She then shared her self-assessment with her supervisor and with human resources.[11]

---

[4] Exh. A, Robinson Transcript, p. 77, lines 6-16; and Exh. B, Garrett Transcript, p. 63, lines 18-22.

[5] Exh. B, Garrett Transcript, p. 63, line 22.

[6] Exhibit C, Psychological Evaluation by Phyllis H. Parker, Ph.D., p. 4. (Summary).

[7] Exh. B, Garrett Transcript, p. 63, lines 10-16.

[8] Exh. B, Garrett Transcript, p. 68, lines 19-23.

[9] Id., p. 69, lines 13-16.

[10] Id., p. 64, and pp. 68-72.

[11] Id., p. 70, lines 7-25.

First State, despite having been provided with a report that strongly suggested, if not confirmed, that Ms. Robinson had a disability, took no further action to assess whether or not there existed a reasonable accommodation that would allow her to perform the essential functions of her job. First State's Human Resources Director, David Bull, testified that First State "did not accept this as an impairment that would prevent her from performing the essential functions of her job".[12] Mr. Bull did not attempt to contact Dr. Parker, and told Ms. Robinson that the report was not acceptable to establish her disability. However, he never explained to Ms. Robinson what documentation would be necessary to establish her claimed disability. In essence, First State did absolutely nothing in response to Dr. Parker's report.[13]

Instead of engaging in an interactive process to determine if, and how, Ms. Robinson's claimed disability could be accommodated, First State provided Ms. Robinson with a negative performance review,[14] and implemented an Individual Development Plan.[15] Both of these documents were implemented in January, 2012, immediately after receipt of Dr. Parker's report.

In response, Ms. Robinson sent a January 20, 2012 email to Mr. Bull, asserting her rights under the ADA and requesting reasonable accommodation in the form of hands-on training. Mr. Bull's response is indicative of First State's failure to even attempt to accommodate:

> Tamra, if you choose not to improve in your job performance in the 45 days (PIP) as reviewed with you, understand your employment is at risk. I fully understand and know ADA. What you need to do ***is your job***. (emphasis in the original) [16]

---

[12] See Exhibit D, Deposition Transcript of David Bull, p. 35, lines 8-17.

[13] *Id.*, pp. 35-37.

[14] Exhibit E, Performance Appraisal.

[15] Exhibit F, Individual Development Plan.

[16] Exhibit G, email stream dated January 20, 2012. Presumably, Mr. Bull's reference to a "PIP" is intended to reference the Individual Development Plan.

When Ms. Robinson sought to clarify whether or not a reasonable accommodation would be forthcoming, she was told to speak with Ms. Garrett.[17] At no time did Ms. Garrett, or anyone connected to First State, take any action to determine if a reasonable accommodation was feasible.[18] Two weeks later, on February 3, 2012, Ms. Robinson's employment was terminated.[19] It is notable that Ms. Robinson was terminated a month and a half prior to the date established for a final review of Ms. Robinson's performance under the Individual Performance Plan,[20] and far less than the "45 days" mentioned in Mr. Bull's email.[21] Shortly thereafter Ms. Robinson filed her Charge of Discrimination.

---

[17] Id.

[18] Exh. B, Garrett Deposition, p. 68; Exh. D, Bull Deposition, pp. 35-37.

[19] Exhibit H, termination letter.

[20] See Exhibit F, p. 2.

[21] Exhibit G.

## SUMMARY OF THE ARGUMENT

A. First State regarded Ms. Robinson as having a disability.

B. Ms. Robinson does in fact suffer from a disability.

C. Ms. Robinson satisfies the elements of a claim under the ADA for failure of First State to Reasonably Accommodate.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts that could affect the outcome are 'material facts,' and a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.[22]

The movant bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[23] Once this initial requirement is met, the burden shifts to the non-moving party to demonstrate the existence of a genuine issue for trial.[24] In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the party opposing summary judgment and draws all reasonable inferences in that party's favor.[25]

In the instant action there are no "pleadings, depositions, answers to interrogatories, admissions, or affidavits". The documents proffered by the movant are precisely the materials that Plaintiff challenges, and have yet to be subjected to scrutiny. Accordingly, the movant cannot satisfy its burden of "no genuine issue of material fact," and the motion must be denied.

---

[22] *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011).

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[24] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989).

[25] *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## ARGUMENT

### A. First State regarded Ms. Robinson as having a disability.

An individual is "regarded as" having a disability if they:

> (1) Have a physical or mental impairment that that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) Have a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.[26]

In the instant case First State clearly regarded Ms. Robinson as being disabled. Within two or three months of becoming her supervisor, Karen Garrett asked Ms. Robinson if she was dyslexic.[27] At that time Ms. Robinson was unaware of the condition, or if it was something she suffered from.[28] Accordingly, Ms. Robinson satisfies at least the second and third standard of the "regarded as" standard, as set forth in *Williams v. Philadelphia Housing Authority Police Dept.*

It is noteworthy that an individual raising a claim for "regarded as" disability under the ADA may simultaneously pursue a claim for failure of the employer to accommodate. In *Williams* the employer argued that if the plaintiff was not actually disabled there was no duty to provide a reasonable accommodation because there was nothing to accommodate. The Court soundly rejected this argument.[29] Here, the fact that First State regarded Ms. Robinson as having

---

[26] *Williams v. Philadelphia Housing Authority Police Dept.,* 380 F.3d 751, 766 (3d Cir. 2004), quoting *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir. 1999) (quoting 29 C.F.R. § 1630.2(1)).

[27] Exhibit B, Garrett Deposition, p. 63, lines 18-22.

[28] Id.

[29] *Williams*, 380 F.3d at 775-6.

a disability entitles her, under the ADA and the standard set forth in *Williams*, to an interactive process to determine if a reasonable accommodation can be accomplished.

B.   **Ms. Robinson does in fact suffer from a disability.**

Following Ms. Garrett's comment about dyslexia, Ms. Robinson sought a professional assessment in order to rule out dyslexia.[30] Dr. Parker's report clearly indicates that she suffers from this condition ("Characteristics of dyslexia are noted . . . [and] range from mild to significant"), and provides a list of Educational Recommendations (that can easily be applied to her work environment) to manage the condition.[31] The Equal Employment Opportunity Commission ("EEOC") recognizes dyslexia as a disability within the meaning of the ADA.[32]

First State clearly disregarded Dr. Parker's analysis, and took no action whatsoever to engage in the interactive process. It is noteworthy that First State rejected Dr. Parker's report, but made no effort whatsoever to explain to Ms. Robinson what steps she could or should take to provide further support for her claim.[33] Instead, First State told Ms. Robinson to "do her job", and buried its head in the sand with respect to whether or not she suffered from a disability.[34]

C.   **Ms. Robinson satisfies the elements of a claim under the ADA for failure of First State to Reasonably Accommodate.**

The Third Circuit has a well-established standard for a Plaintiff to satisfy in order to set forth a claim under the ADA for failure of the employer to make a reasonable accommodation. In order to establish her claim, the Plaintiff must demonstrate the following:

---

[30] Exh. C.

[31] Id., p. 4 (Summary) and p. 5.

[32] Exhibit I, EEOC Fact Sheet, 4th paragraph, identifying lawsuits filed by the EEOC alleging disability discrimination.

[33] Exh. D, Bull Deposition, pp. 35-37.

[34] Exh. G.

00256990                                   9

First: Plaintiff has a "disability" within the meaning of the ADA.

Second: Plaintiff is a "qualified individual" able to perform the essential functions of their job.

Third: Defendant was informed of the need for an accommodation of plaintiff due to a disability. [Note that there is no requirement that a request be made for a particular or specific accommodation; it is enough to satisfy this element that defendant was informed of plaintiff's basic need for an accommodation.]

Fourth: Providing an accommodation would have been reasonable, meaning that the costs of that accommodation would not have clearly exceeded its benefits.

Fifth: Defendant failed to provide the accommodation(s) in dispute or any other reasonable accommodation.[35]

In the instant case, Ms. Robinson satisfies all of the necessary elements to establish her claim that First State violated the ADA by failing to provide her with a reasonable accommodation, and then terminated her employment within weeks of her final request.

1. <u>Ms. Robinson has a disability within the meaning of the ADA.</u>

The Equal Employment Opportunity Commission ("EEOC") recognizes dyslexia as a disability within the meaning of the ADA. The EEOC's web site has numerous references to dyslexia as a covered disability, including its Fact Sheet: "What You Should Know about the EEOC and Enforcement of the Americans with Disabilities Act". In that document, dyslexia is a condition for which the EEOC has filed suit since July 2013.[36] Dr. Parker's report, which remains uncontroverted, establishes that Ms. Robinson suffers from dyslexia, with characteristics ranging from "mild to significant".[37]

---

[35] Exhibit J, Third Circuit Model Jury Instructions (last updated May 2016) § 9.1.3.

[36] Exh. I.

[37] Exh. C.

2. <u>Ms. Robinson is qualified to perform the essential functions of her job.</u>

First State fails to assert that Ms. Robinson was not otherwise qualified to perform the essential functions of her job. She worked for the agency since October 2009, and her supervisor, Ms. Garrett, assumed that she had the necessary certifications to perform the position.[38] First State provided Ms. Robinson with clear guidelines for improving her performance in the form of the Individual Development Plan, indicating that the agency believed that she had the ability to perform in the position.[39] Accordingly, First State cannot now argue that Ms. Robinson was not qualified to perform the essential functions of her job.

3. <u>First State was aware of the need to accommodate due to a disability.</u>

In response to Ms. Garrett's inquiry,[40] Ms. Robinson obtained Dr. Parker's report and provided it to her supervisor.[41] From that moment First State was clearly on notice of the disability and the need to accommodate. Further supporting this prong is Ms. Robinson's email of January 20, 2012, wherein she raised the need for accommodation and suggested hand's-on training.[42]

4. <u>An accommodation would have been reasonable.</u>

As set forth above, First State did absolutely nothing in response to Dr. Parker's report. Its' Human Resources Director, who represented that he "fully understand[s] and know[s] ADA",[43] took no action to respond to the Dr. Parker report.[44] Ms. Robinson, in her January 20,

---

[38] Exh. B, Garrett Deposition, p. 20, lines 12-15.

[39] Exh. F.

[40] Exh. B, Garrett Deposition, p. 63, lines 18-22.

[41] Id., lines 10-16.

[42] Exh. G.

[43] Exh. G.

2012 email, made very specific and basic accommodation requests, and was told in response: "What you need to do *is your job*."[45] First State cannot, therefore, argue that the requested accommodations are unreasonable when they failed to even attempt to assess whether they were feasible.[46]

5. <u>First State failed to provide any accommodation.</u>

As set forth above, First State failed to provide any accommodation. Instead, it provided a negative performance review,[47] an Individual Development Plan,[48] and terminated Ms. Robinson well before the date specified in the IDP for final review.[49]

---

[44] Exh. D, Bull Deposition, pp. 35-37.

[45] Exh. G (emphasis in the original).

[46] See *Williams*, 380 F.3d at 771-2 (additional citations omitted).

[47] Exh. E.

[48] Exh. F.

[49] Id., and Exh. H.

## CONCLUSION

Having satisfied the elements for a claim under the ADA, both as having been "regarded as" having a disability, and the employer's failure to accommodate, Ms. Robinson respectfully requests that her Motion for Summary Judgment be granted as to liability, with a damages inquisition scheduled at the Court's earliest convenience.

**COOCH AND TAYLOR, P.A.**

*/s/ G. Kevin Fasic*
G. Kevin Fasic (#3496)
Katherine R. Witherspoon (#3348)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
gfasic@coochtaylor.com- Email
(302) 984-3817- Telephone
(302) 984-3939- Facsimile

*Attorneys for Plaintiff*

July 29, 2016