IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TAMRA N. ROBINSON,

            Plaintiff,

v.

FIRST STATE COMMUNITY
ACTION AGENCY,

            Defendant.

Civil Action No. 14-1205-RGA

## MEMORANDUM

Tamra Robinson, Plaintiff, filed this action against First State Community Action Agency, Defendant, alleging violations of the Americans with Disabilities Act ("ADA"). Plaintiff asserted that: (1) Defendant regarded her as dyslexic yet failed to engage in an interactive process to provide her with reasonable accommodations; and (2) Defendant terminated her because she was regarded as dyslexic. On December 8, 2016, "judgment [was] entered in favor of [Defendant] on the ADA 'termination' claim; and . . . judgment in the amount of twenty-two thousand five hundred one dollars ($22,501) [was] entered in favor of [Plaintiff] on the ADA 'interactive process' claim." (D.I. 73).

Before the Court is Defendant's motion for a new trial. (D.I. 82). Defendant moves under two theories: 1) the jury was prejudiced by hearing inadmissible testimony about the Equal Employment Opportunity Commission ("EEOC") findings in favor of Plaintiff, and 2) the jury was instructed on the statutory cap on punitive damages in contravention of federal law. For the reasons stated below, Defendant's motion is **DENIED**.

Also before the Court is Plaintiff's motion for attorneys' fees, legal expenses, and costs. (D.I. 81). As the prevailing party, Plaintiff seeks recovery of attorneys' fees under 42 U.S.C. § 12205. (*Id.*). Plaintiff requests an award of a lodestar in the amount of $150,412, and for litigation costs and expenses in the amount of $2,637.28, representing the amounts incurred through January 3, 2017. (*Id.* ¶ 15). In Plaintiff's reply, Plaintiff requests that $17,876.72 be added to the lodestar for attorneys' fees incurred between January 3, 2017 and January 24, 2017. (D.I. 85 at 8). Thus, Plaintiff's total request is attorneys' fees of $168,288.72 and costs of $2,637.28. (*Id.*). For the reasons set forth below, Plaintiff's motion is **GRANTED** in part and **DENIED** in part.

## DEFENDANT'S MOTION FOR NEW TRIAL

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(a)(1)(A) provides, in pertinent part: "The court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 584–85 (D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993). Although the standard for granting a

2

new trial is less rigorous than the standard for granting judgment as a matter of law—in that the Court need not view the evidence in the light most favorable to the verdict winner—a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352–53 (3d Cir. 1991).

## II.    THE EEOC TESTIMONY

In Defendant's motion for a new trial, Defendant contends that Defendant was prejudiced by Plaintiff's testimony that the EEOC found in her favor. (D.I. 82). Defendant also argues that Plaintiff's counsel intentionally elicited the statement from Plaintiff. (D.I. 86 ¶ 1).

On the first day of the trial, Plaintiff testified that she filed a complaint with the EEOC and that the EEOC ruled in her favor. (D.I. 87 at 3).

> Q. After you were terminated, what did you do next?
> A. I filed a Complaint with the EEOC, the Equal Employment Opportunity Commission and filed for unemployment.
> Q. The EEOC, to your understanding, what is that they do?
> A. They, I guess, help support those who feel like they were discriminated against with regard to a disability.
> Q. Why did you go to them?
> A. To get backing in regards to the evaluation and me doing -- show them the evaluation was sufficient enough for a defense.
> Q. What happened next?
> A. The EEOC ruled in my favor.

(*Id.*) Defendant objected, and I called counsel to sidebar. (*Id.*). Defendant requested a mistrial, which I denied. (*Id.* at 4). I told the parties trial was going to move forward, but I asked Defendant's counsel if there was something else she would like me to do. (*Id.* at 6). Defense counsel made no suggestions in response. I struck the question and answer and instructed the jurors to disregard what they had heard and to not rely on it for anything. (*Id.* at 8).

3

> Members of the jury, you may recall at the beginning of the trial I said I might
> have to strike some testimony and tell you to disregard what you heard. The last
> question and answer, I am striking that testimony, and you have to disregard what
> you heard. You cannot rely on it for anything. You need to put it out of your
> mind.

(*Id.*). After my instruction, there was no further discussion of the EEOC throughout the trial.

I am not granting Defendant's request for a new trial for two reasons. First, the instruction I gave was sufficient to alleviate any prejudice to Defendant. The Supreme Court held that a district court should "presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987). I promptly struck the testimony. My instruction was not objected to. The testimony itself was not detailed and not even all that clear what Plaintiff was saying the EEOC ruled on in her favor. The jury's verdict was split, showing individual analysis of the two asserted claims. There is no reason to believe that the EEOC testimony prejudiced the jury, and I do not believe that it had any effect on the verdict.

Second, I do not find that Plaintiff's counsel intentionally elicited the testimony from Plaintiff. When I asked Plaintiff's counsel whether he had expected Plaintiff's testimony, his responses were not altogether clear. I would summarize my understanding of his explanation to be that he was not shocked by the response but he was trying to demonstrate that the EEOC did not work out and that is why Plaintiff had to file a lawsuit. (D.I. 87 at 5-6). After reviewing Plaintiff's counsel's line of questioning leading to the EEOC findings statement, and his responses to my inquiry during the sidebar, I find that the EEOC testimony was inadvertently

4

presented to the jury. Since the jury was not prejudiced, and the EEOC testimony was inadvertent, a new trial is not warranted.

## III.   **THE STATUTORY DAMAGES CAP**

Defendant argues that I should grant a new trial because the jury was instructed on the statutory limitations of $50,000 for punitive damages. That was an error. Under 42 U.S.C. § 1981a(c)(2), "If a complaining party seeks compensatory or punitive damages under this section . . . the court shall not inform the jury of the limitations." Defendant, however, did not make any objection to the instruction on the record, despite multiple opportunities to do so.

"A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). Further, a "party may assign as error: an error in an instruction actually given, [only] if that party properly objected." Fed. R. Civ. P. 51(d)(1).

During a conference, I drew the parties' attentions to the inclusion of the damages cap in the proposed verdict form and asked for their input on adding an instruction about the cap. (D.I. 88 at 3). Neither Plaintiff nor Defendant objected. (*Id.*). Instead, both parties agreed that the instruction should be included. (*Id.*). During the charging conference, I again asked the parties if they objected to any of the proposed jury instructions, which included an instruction on the damages cap. (D.I. 89 at 3-21). Defendant raised six objections, but none pertained to the damages cap. (*Id.*). After Defendant's counsel raised the objections, she stated, "And I believe that is all I had for the final version of the jury instructions." (*Id.* at 18). I read the jury instruction to the jury as revised and consented to by both parties. The jury then retired and went to the jury room for deliberation.

5

Defendant did not object to the instruction on the damages cap nor its inclusion in the verdict form. Thus, the instruction was not reversible error. *See McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750 (3d Cir. 1990) (erroneous punitive damages instruction not plain error); *Trent v. Atlantic City Elec. Co.*, 334 F.2d 847, 859 (3d Cir. 1964) (noting that reviewing errors in jury instructions which were not objected to at trial should be exercised "to prevent only what is deemed a miscarriage of justice").

Further, any error was harmless. It is certainly open to debate whether telling the jury that the maximum amount of punitive damages is $50,000 is worse for Defendant than leaving the maximum amount unstated. I do not think it all likely that had I not instructed on the cap, the jury would have awarded less. Having not raised the objection during trial, Defendant is barred from raising this objection now.

Since the erroneous testimony was stricken with a curative instruction, the erroneous jury instruction was not objected to, and it did not harm Defendant, there is no reason to grant a new trial. Thus, Defendant's motion for new trial is **DENIED**.

## PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

### IV. STANDARD OF REVIEW

Under the fee-shifting provision of the ADA, a district court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. Since Plaintiff prevailed on her interactive process claim, she is a prevailing party entitled to reasonable attorney's fees. A reasonable fee "is one that is adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1984). In calculating the amount of reasonable attorney's fees, "[t]he most useful starting point . . . is the number of hours reasonably expended

6

on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The result of this calculation is called the lodestar. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

A court determines a reasonable hourly rate by reference to the prevailing market rates in the community and the evidence submitted "supporting the hours worked and rates claimed" to a court. *Hensley*, 461 U.S. at 433. "The prevailing party bears the burden of establishing by way of satisfactory evidence" and the "[attorneys'] own affidavits, that the hourly rates meet this [community rate]." *Washington v. Phila. Cty. Ct. of C.P.*, 89 F.3d 1031, 1035 (3d Cir. 1996). With respect to the number of hours expended, the prevailing party must establish that those hours were "reasonably expended." *Hensley*, 461 U.S. at 434. "The district court . . . should exclude from [the lodestar] calculation hours that were not reasonably expended." *Id.* The court also may exclude from the lodestar calculation hours "spent litigating on claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed." *Rode*, 892 F.2d at 1183.

"After determining the [reasonable rate and] number of hours reasonably expended," the court "multiplies that rate by the reasonable hours expended to obtain the lodestar." *Id.* "The lodestar is presumed to be the reasonable fee." *Id.* "The court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." *Id.* This downward adjustment "accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of successful claims." *Id.* "The district court cannot decrease a fee award based on factors not raised at all by the adverse party." *Id.* With these standards in mind, I turn to Plaintiff's request.

7

## V. **LODESTAR**

To support the fees request, Plaintiff submitted three affidavits from local attorneys, practicing in the field of plaintiff-side employment law. (D.I. 81 at Ex. A-C). Plaintiff also submitted a twenty-two page itemized record detailing the date work was performed, the individual who performed it, a description of the work, the number of hours spent, and the amount charged. (*Id.* at Ex. F). Defendant contests the reasonableness of the hourly rates, contests the reasonableness of the time spent on litigation, contests the adequacy of the documentation, and requests various adjustments to the lodestar. (D.I. 85). I will address each of Defendant's challenges in turn.

### A. HOURLY RATES

Defendant argues Plaintiff's attorneys' hourly rates of $410 should be reduced. Defendant points to the $350 hourly rate awarded in *Burris v. Richards Paving.* 472 F. Supp. 2d 615 (D. Del. 2007). While that may have been reasonable for that case, which was a decade ago, the standard is, "The prevailing party bears the burden of establishing by way of satisfactory evidence . . . that the hourly rates meet this [community rate]." *Washington* 89 F.3d at 1035. Plaintiff provided the Court with three affidavits from local attorneys in support of the reasonableness of the hourly rates. (D.I. 81 at Ex. A-C). Plaintiff has established that the requested rates here are reasonable. Thus, no adjustment will be made to the hourly rates.

### B. TIME SPENT ON LITIGATION

Defendant argues that "the case was overstaffed with two attorneys expending 352.3 hours," and that "the issues in this case were not unusually complex, and the trial was not unduly long or burdensome." (D.I. 83 ¶¶ 18-19). Defendant requests that I "find that the time expended throughout the litigation was [excessive] and not award the requested prevailing rate for both

8

attorneys." (*Id.* ¶ 18). Defendant "assert[s] that the [trial preparation and presentation] fees should be reduced by half." (*Id.* ¶ 19).

The use of two attorneys during trial is not excessive, and no adjustment will be made to the lodestar on the basis of the purported overstaffing. *Contrast Taylor v. USF-Red Star Express, Inc.*, 2005 WL 555371 at *3 (E.D. Pa. Mar. 8, 2005) (reducing the trial billing hours in an ADA case because the plaintiff used three senior attorneys at trial "when one or two would have sufficed."). Trials require a greater commitment of resources. I also note that most of the pretrial work was done with one attorney.

### C. DOCUMENTATION

Defendant contests certain entries as being "insufficient to support a fee award." Although a motion for attorney's fees should have "some fairly definite information as to the hours," it is only required to be "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Rode*, 892 F.2d at 1190. Although some of Plaintiff's entries are not extremely detailed, all of Plaintiff's entries are specific enough for the Court to understand the reasonableness of the work performed. Thus, no adjustment will be made to the entries.

Plaintiff's Exhibit F, the twenty-two page itemized record detailing the attorneys' fees, is accepted as adequate documentation for a fee award.

The starting point—the lodestar—is $168,288.72. Next, I will address Defendant's request for adjustments to the lodestar.

### VI. ADJUSTMENTS TO THE LODESTAR

In Defendant's answer (D.I. 83), Defendant requests several adjustments to the lodestar. Defendant argues I should reduce the lodestar for any post-trial charges, for secretarial work

9

performed at paralegal hourly rates, for travel billed at full hourly rates, for issues caused and prolonged by Plaintiff, for costs incurred by the change of Plaintiff's theory of the case, for costs relating to Dr. Parker's deposition, and for Plaintiff's unsuccessful termination claim. (*Id.*). I will examine each argument Defendant raises.

### A. POST-TRIAL CHARGES

Defendant "contests [post-trial] charges relating to the preparation of the Motion for [Attorneys'] Fees." (D.I. 83 ¶ 16).

The Third Circuit has held "the time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award." *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978). Plaintiff's post-trial charges spent in preparing the motion for attorneys' fees and replying to Defendant's answer are compensable. No adjustment will be made to the lodestar just because it includes Plaintiff's post-trial fees.

### B. SECRETARIAL WORK

Defendant argues that the "hours of secretarial work" performed by paralegals required no "specialized legal training" and requests a reduction in the lodestar equivalent to the difference had the hours been performed by a secretary. (D.I. 83 ¶ 17). While paralegal work can be included in a fees award, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri*, 491 U.S. 274, 288 n. 10 (1989). The tasks described by Defendant as "hours of secretarial work" are not "purely clerical or secretarial tasks" because e-filing, retrieving pleadings from the docket, and calling a court reporter or clients are not purely secretarial. No adjustment will be made to Plaintiff's hours based on the theory that a secretary should have performed the work.

10

## C. TRAVEL

Defendant argues that I should reduce Plaintiff's fees for travel time because Plaintiff charged "the full hourly fee for travel to and from depositions located within two hours of the court of jurisdiction." (D.I. 83 ¶ 21). "[M]atters of this sort are within the discretion" of the Court. *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991) (upholding the district court's decision to award compensation for travel time at the regular hourly rate). Defendant, not Plaintiff, chose Georgetown, Delaware as the location of the depositions. Since Plaintiff's travel time could have been avoided by Defendant, no adjustment will be made to Plaintiff's travel time billing.

## D. ISSUES CAUSED AND PROLONGED BY PLAINTIFF

Defendant requested residential, employment, and educational records. Plaintiff refused to provide that information. (D.I. 83 ¶ 22). Defendant filed a motion to compel (D.I. 25) which Plaintiff answered (D.I. 28), but, "[o]n the same day, Plaintiff provided the information, and Defendant subsequently withdrew the motion." (*Id.*). Had Plaintiff turned over the residential, employment, and educational records instead of billing for an answer and only then turning over the information, the costs associated with this motion to compel could have been avoided. Since the costs could and should have been avoided by Plaintiff, the lodestar will be reduced with regards to the costs expended on the motion to compel. The lodestar is reduced by $2,270.00 to $166,018.72.

## E. CHANGE OF PLAINTIFF'S THEORY OF THE CASE

Defendant argues for a reduction for the "belated change in Plaintiff's theory of the case." (D.I. 83 ¶ 23). Defendant argues that early in the case, "Plaintiff asserted that she was dyslexic," but "[l]ater in the litigation, Plaintiff asserted that she was 'regarded as' disabled."

11

(*Id.*). Defendant filed a motion for summary judgment in anticipation that Plaintiff's only theory was that she was dyslexic but did not anticipate the "regarded as disabled" theory.

Defendant did not indicate, in any document, when Plaintiff supposedly changed her theory of the case. There is no evidence in the record (at least that has been called to my attention), *cf.* Fed. R. Civ. P. 56(c)(3) & (e)(2) (putting the burden on the parties to point to the record that supports a party's position), that Plaintiff misled Defendant on her theory of the case.

Plaintiff merely alleged "discrimination against [her] because of [her] disability in violation with the [ADA]." (D.I. 2 at 7). The term "disability" as used in 42 U.S.C. § 12101 has three meanings: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. Thus, simply because Plaintiff states she has a disability does not mean that she is not arguing that she is regarded as having a disability.

Plaintiff's *pro se* complaint alleged facts that supported a "regarded as" theory. She checked the disability box, and also wrote that she had "informed [her supervisor] that I had a disability." (*Id.* at 7 & 9). Defendant might have anticipated all three meanings of "disability" under § 12101 as theories of the case. Defendant might have pinned Plaintiff down as to which theories she was pursuing, and which not. I do not see that Defendant did so. Therefore, the costs associated with replying to Defendant's summary judgment motion were reasonably expended. No adjustment will be made to the lodestar for hours and costs arising from the motion for summary judgment.

## F. DR. PARKER'S DEPOSITION

Defendant argues I should downwardly adjust the lodestar by $2,050 for costs incurred with Dr. Parker's deposition. (D.I. 83 ¶¶ 23-24). Dr. Parker produced a report that was a central

12

exhibit at trial for the "regarded as" theory. (*Id.* ¶ 23). Defendant noticed and took the deposition of Dr. Parker (D.I. 38, 46-1); however, Dr. Parker ultimately did not testify at trial, and her deposition was not offered in support of the "regarded as" theory. Since Defendant took Dr. Parker's deposition, and Plaintiff necessarily had to take part in it, no adjustment will be made to the lodestar for time spent on Dr. Parker's deposition.

## G. PLAINTIFF'S UNSUCCESSFUL CLAIM

Defendant argues that I should award an amount that is "commensurate with the limited success attained by [Plaintiff] and the type of claim pursued." (D.I. 83 ¶ 26). Plaintiff brought an ADA interactive process claim and an ADA termination claim against Defendant, but only prevailed on the ADA interactive process claim. "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* at 436-37. In *Hensley*, the Supreme Court rejected the use of "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon. [Because such] a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Id.* at 435 n. 11.

Plaintiff had two claims. She only prevailed on one of them – the ADA interactive process claim. The jury awarded $1 in nominal damages and $22,500 in punitive damages. This is a limited success "in comparison to the scope of the litigation as a whole." *Id.* at 440. Plaintiff got nothing for being terminated. That was her lead claim. She sought $34,000 for it. (D.I. 60 at

13

14). She did not prevail on it. Recognizing Plaintiff's success at trial was only partial, but also recognizing the intertwined nature of the successful and unsuccessful claims, I think it is appropriate to adjust the lodestar of $166,018.72 by reducing it by 20%. The awarded adjusted lodestar amount is $132,814.98.

## VII. LITIGATION COSTS

Plaintiff submitted an itemized record detailing the date the litigation expense was incurred, a description of each expense, and the amount for each expense. (D.I. 81 Ex. F). Plaintiff requests reimbursement of litigation costs in the amount of $2,637.28. (*Id.* ¶ 9).

With regards to litigation costs, Defendant only contests the costs of Dr. Parker's deposition transcript, which is $400.20, for the same reasons that the hours expended on Dr. Parker's deposition were unreasonably expended. (D.I. 83 ¶ 27). Since Plaintiff established that the hours spent on Dr. Parker's deposition were necessary, Dr. Parker's deposition transcript was also necessary. No expense regarding Dr. Parker's deposition transcript shall be deducted from the litigation costs. The awarded litigation costs are $2,637.28.

## VIII. CONCLUSION

For the aforementioned reasons, Defendant's motion for new trial (D.I. 82) is **DENIED**, and Plaintiff's motion for attorneys' fees (D.I. 81) is **GRANTED** in part and **DENIED** in part. The total amount awarded is $135,452.26.

A separate order will be entered.

*[signature]*
United States District Judge 8/29/17