**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3141
_____

TAMRA N. ROBINSON

v.

FIRST STATE COMMUNITY ACTION AGENCY,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-14-cv-01205)
District Judge:  Hon. Richard G. Andrews
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 23, 2018

Before:  KRAUSE, COWEN, FUENTES, *Circuit Judges*.

(Filed April 1, 2019)

Tasha M. Stevens
Fuqua Willard Stevens & Schab
26 The Circle
P.O. Box 250
Georgetown, DE 19947

       *Counsel for Appellant*

Kevin G. Fasic
Katherine R. Witherspoon
Offit Kurman
1201 North Orange Street
Suite 10 East
Wilmington, DE 19801

       *Counsel for Appellee*

————————————

OPINION OF THE COURT

————————————

FUENTES, *Circuit Judge*.

       Tamra Robinson was told by her manager Karen Garrett that her work performance was so poor that "you either don't know what you're doing, or you have a disability, or [you're] dyslexic." Taking Garrett's words seriously, Robinson, who had never before considered the possibility she might have a disability, decided to undergo testing for dyslexia. She sent Garrett an evaluation that concluded that Robinson had symptoms consistent with dyslexia, and requested certain

2

accommodations from the manager of human resources. She was told that any diagnosis she received would not prevent her from performing her work in a satisfactory matter, and she was advised to focus on improving her performance. Weeks later, she was fired.

During the litigation in the District Court between Robinson and her former employer, First State Community Action Agency, Robinson acknowledged that she could not prove she was dyslexic. She proceeded on a different theory, that she was perceived or regarded as dyslexic by her employer and was therefore entitled to a reasonable accommodation the same way someone who was dyslexic would have been. While we have previously recognized the validity of a "regarded as" disability case theory in cases arising under the Americans with Disabilities Act,[1] the ADA Amendments Act of 2008[2] made clear that a "regarded as" plaintiff is not statutorily entitled to accommodation.[3] Despite this, both parties proceeded under the "regarded as" case theory throughout litigation, trial, and post-trial briefing. Only now does First State seek to unring the bell and overturn the jury's verdict because the jury was instructed that the "regarded as" case theory was valid. We hold that First State has waived this argument because of its continued acquiescence to Robinson's case theory, its encouragement of the adoption of the very jury instruction to which it now objects, and its failure to include this error in its post-trial briefing. We therefore affirm the judgment of the District Court.

_____

[1] *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 775 (3d Cir. 2004).
[2] Pub. L. No. 110-325, § 6, 122 Stat. 3553, 3558 (2008).
[3] 42 U.S.C. § 12201(h).

## I.      Background

### A.      Robinson's Employment at First State

In October 2009, Tamra Robinson was hired by First State Community Action Agency ("First State") as an individual development account counselor.[4]  Almost two years later, First State hired Karen Garrett, and Garrett became Robinson's supervisor.  Garett was dissatisfied with Robinson's work, and in November 2011, Garrett told Robinson "you either don't know what you're doing, or you have a disability, or [you're] dyslexic."[5]

Robinson had never before considered whether she had any kind of disability.  She attempted to find a physician to conduct an evaluation for dyslexia, and ultimately reached out to a family friend, Dr. Phyllis Parker, who was a psychologist.  After undergoing testing in January 2012, Robinson received an evaluation from Dr. Parker noting that she demonstrated "signs of dyslexia," but this evaluation did not diagnose her with the disorder.[6]  She immediately forwarded it to Garrett.

While Robinson was undergoing this process, Garrett completed a performance appraisal for Robinson.  On January 12, 2012, she placed Robinson on an individual development plan addressing six areas of concern.  The plan provided for biweekly reviews of Robinson's progress followed by a final evaluation in March of that year.  Garrett received Dr. Parker's

---

[4] About a year later, she was transitioned into the position of housing default counselor.

[5] J.A. 65.

[6] J.A. 75.

4

evaluation just six days after completing the development plan. She forwarded it to First State's Human Resources Director, David Bull. Bull emailed Robinson, informing her that he received a copy of her "Informal Dyslexia Screening."[7] Nevertheless, he told Robinson that he did not believe the diagnostic information contained in the evaluation would "impact[] [Robinson's] ability to perform the essential elements of [her] job responsibilities" and instructed her to follow the individual development plan.[8] The next day, Robinson wrote back and asked for "reasonable accommodations"—specifically, she asked for "hands-on organized training for the types of clients" she would be responsible for counseling.[9] Bull replied by saying, "I fully understand and know ADA. What you need to do *is your job*."[10] A few weeks later, Robinson was fired.

### B.    Proceedings Below

In 2014, Robinson filed the instant suit against First State alleging violations of the Americans with Disabilities Act. Since at least the summary judgment stage, she argued that First State wrongfully terminated her and wrongfully denied her reasonable accommodations, both because she actually possessed a disability (dyslexia) and because First State regarded her as dyslexic.[11] The dispute between

---

[7] J.A. 253.

[8] *Id.*

[9] J.A. 250.

[10] J.A. 252.

[11] *See* Opening Brief in Support of Robinson's Motion for Summary Judgment ("Robinson SJ Br.") (Doc. 48) at 8,

Robinson and First State proceeded to trial, and Robinson prevailed on her reasonable accommodation claim but not her termination claim. First State then moved for a new trial, and cited two alleged errors during the course of the trial.

First, during Robinson's direct examination, she testified that after being terminated, she filed a complaint with the Equal Employment Opportunity Commission, which, she further testified, ruled in her favor. At sidebar, counsel for First State objected and requested a mistrial. The District Court instead struck the response, informing the jury:

> Members of the jury, [you] may recall at the beginning of the trial, that I might have to strike some testimony, and tell you to disregard what you heard.
>
> That last question and answer, I am striking that testimony, and you have to disregard what you heard. You cannot rely on it for anything. You need to put it out of your mind.[12]

---

*Robinson v. First State Cmty. Action Agency*, 14 Civ. 1205 (RGA) (D. Del. 2014).

[12] J.A. 132. Later, the District Court further explained the ruling outside the presence of the jury, noting that it did not find an intentional violation of the rule against the improper introduction of evidence. The District Court also referenced a Seventh Circuit case, *Wilson v. Groaning*, 25 F.3d 581 (7th Cir. 1994), which concluded that the improper admission of testimony was sufficiently cured by the trial court's prompt decision to strike the testimony and instruct the jury to disregard it.

In its post-trial decision, the District Court maintained that striking the testimony was a sufficient response to the inadmissible evidence because juries are presumed to follow a court's instructions, and the split verdict showed that they were not unduly swayed by the testimony.

Second, the District Court mentioned the statutory damage cap for Robinson's claims in its jury instructions.[13] After trial, the District Court agreed that the instruction was error, but determined that because First State did not object at trial and the error was harmless, it did not merit a new trial.

First State now appeals that decision, arguing that it merits a new trial both because of the stricken testimony about the Commission's finding and because of the erroneous damages cap instruction. First State also argues, for the first time, that the judgment below should be vacated because Robinson's "regarded as" disabled case theory was precluded by the ADA Amendments Act of 2008.[14]

---

[13] The Court informed the jury that "[t]he total amount of compensatory and punitive damages combined you can award in this case is $50,000." J.A. 389.

[14] First State styles this objection as one regarding the District Court's jury instructions. The District Court instructed the jury on Robinson's reasonable accommodation claim as follows: "You can find that First State breached its duty to provide reasonable accommodations because it failed to engage in an interactive process if Ms. Robinson proves four things: First, First State regarded Ms. Robinson as dyslexic. Second, Ms. Robinson requested accommodation or assistance. Third, First State did not make a good faith effort to assist Ms. Robinson

## II.   Discussion

### A.   The 2008 Amendments

In 2008, the Americans with Disabilities Act was amended.  The Act now provides that employers "need not provide a reasonable accommodation . . . to an individual who meets the definition of disability in [Section 12102(1)(C)]."[15] That Section, in turn, includes the definition of individuals who are "regarded as having" a physical or mental impairment.[16]  In other words, after the 2008 Amendments went into effect, an individual who demonstrates that she is "regarded as" disabled, but who fails to demonstrate that she is actually disabled, is not entitled to a reasonable accommodation.[17]   Therefore, the reasonable accommodation jury instruction, which informed the members of the jury that they needed to find only that First State "regarded Ms. Robinson as dyslexic,"[18] was error.

The question before us is whether to review this error under the strict plain error standard or whether to treat the

---

in seeking accommodations; and fourth, Ms. Robinson could have reasonably been accommodated but for First State's lack of good faith."  J.A. 384.

[15] 42 U.S.C. § 12201(h).

[16] 42 U.S.C. § 12102(1)(C).

[17] *See Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 n.7 (7th Cir. 2011) ("[T]he ADAAA clarified that an individual 'regarded as' disabled (as opposed to actually disabled) is not entitled to a 'reasonable accommodation.'").   We have also made this point in prior decisions.  *See, e.g.*, *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 188 n.17 (3d Cir. 2009).

[18] J.A. 384.

objection as waived.  Despite the fact that Robinson discussed her position that she need only prove she was regarded as dyslexic as early as 2016, when she filed her motion for summary judgment, First State never addressed the effect of the 2008 Amendments until its briefing before this Court.  It contends that its failure to raise this argument is best understood as a failure to object to an erroneous jury instruction and should therefore be reviewed under our plain error standard.  We disagree because, although First State focuses narrowly on how this error manifested in the jury instructions, it was more broadly a flaw in Robinson's theory of the case that dated back to summary judgment briefing, and First State at no time objected to that theory despite numerous opportunities to do so.  Thus, we view the argument as waived, and we decline to consider it for the first time on appeal.

### 1.    Forfeiture and Waiver

"The effect of failing to preserve an argument will depend upon whether the argument has been forfeited or waived."[19]   Forfeiture is the "failure to make the timely assertion of a right."[20]   Waiver is the "intentional relinquishment or abandonment of a known right."[21]   Waived arguments about jury instructions may not be resurrected on appeal.[22]  When the argument was merely forfeited, however,

---

[19] *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017).

[20] *Id.* at 147 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

[21] *Id.* (citation omitted).

[22] *Id.* at 146 n.7.

plain error analysis applies,[23] and we will reverse only where the error is "fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice."[24]

We find that First State's actions below are more appropriately classified as waiver. Throughout the history of this litigation, including in its early stages, First State was routinely confronted with Robinson's "regarded as" case theory. Not only did First State fail to object, it specifically assented to the jury instruction it now points to as erroneous.

In 2016, First State moved for summary judgment, arguing, among other things, that Robinson could not establish that she was disabled under the terms of the Americans with Disabilities Act.[25] In response, and in her motion for summary judgment, Robinson argued that she only needed to establish that First State "regarded her" as disabled.[26] Instead of correcting Robinson's error of law, First State argued that there

---

[23] *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also* Fed. R. Civ. P. 51(d).

[24] *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 339 (3d Cir. 2005) (quoting *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 136 (3d Cir. 1997)).

[25] *See* Opening Brief in Support of First State's Motion for Summary Judgment (Doc. 45), *Robinson v. First State Cmty. Action Agency*, 14 Civ. 1205 (RGA) (D. Del. 2014).

[26] Robinson SJ Br. at 8; Brief in Opposition to First State's Motion for Summary Judgment (Doc. 50) at 9–11, *Robinson v. First State Cmty. Action Agency*, 14 Civ. 1205 (RGA) (D. Del. 2014).

was no evidence First State treated Robinson as though she had a "substantially limiting impairment."[27]  The Magistrate Judge disagreed, and found that summary judgment was inappropriate because there was a question of material fact regarding whether First State considered Robinson disabled.[28] First State filed no objections to the Report and Recommendation, failing again to argue that a plaintiff could no longer proceed under a "regarded as" disability theory for reasonable accommodation claims.[29]

Those failures, alone, would not be enough to waive the issue on appeal, but the viability of the "regarded as" case theory was squarely before First State again at trial.  At a conference outside the jury's presence in December 2017, plaintiff's counsel suggested that the relevant jury instruction include the four-part test from *Williams v. Philadelphia Housing Authority Police Department* on a failure to reasonably accommodate a plaintiff who was "regarded as" disabled.[30]  Defense counsel initially provided no views about

---

[27] *See* Brief in Opposition to Robinson's Motion for Summary Judgment (Doc. 51) at 8, *Robinson v. First State Cmty. Action Agency*, 14 Civ. 1205 (RGA) (D. Del. 2014).

[28] *See* Report and Recommendation dated October 24, 2016 (Doc. 56) at 8–10, *Robinson v. First State Cmty. Action Agency*, 14 Civ. 1205 (RGA) (D. Del. 2014).

[29] *See* Order dated November 17, 2016 (Doc. 57), *Robinson v. First State Cmty. Action Agency*, 14 Civ. 1205 (RGA) (D. Del. 2014).

[30] In *Williams*, we concluded that the Americans with Disabilities Act as then codified entitled a plaintiff who was regarded as disabled to reasonable accommodations.  380 F.3d 751, 775 (3d. Cir. 2004).  We set forth the following four

the jury charge.  That evening, plaintiff's counsel sent an email clearly stating that "as we represented today, we are not arguing that Ms. Robinson *has* a disability."[31]  The email also provided more concrete suggestions to include the *Williams* test in the instructions.  At the charge conference the next day, defense counsel voiced her support for Robinson's proposed jury instruction, specifically saying that while she had not seen the new proposed language, she agreed that "it would be simpler if the accommodation claim is included" and that "the language about the failure to engage in the four-part test"—the language derived from *Williams*, which held that a "regarded as" plaintiff could pursue a reasonable accommodation claim—should be included.[32]  After First State was found liable

_____

elements for establishing that an employer breached its duty to provide reasonable accommodations:  "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith."  *Id.* at 772 (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319–20 (3d Cir. 1999)).  The instructions given to the jury below modified those in *Williams* to reflect the entitlement of a "regarded as" plaintiff to a reasonable accommodation.  Those instructions correctly explained the law under our precedent in *Williams*, but the 2008 Amendments abrogated *Williams* on that point.

[31] Email to the Court dated December 7, 2016 (Doc. 69), *Robinson v. First State Cmty. Action Agency*, 14 Civ. 1205 (RGA) (D. Del. 2014).

[32] J.A. 211–12.  Specifically, Stevens said, "Your Honor, I'm not exactly sure of how [Robinson] want[s] to change the

on Robinson's reasonable accommodation claim, it moved for a new trial. But it did not raise the error in that post-trial briefing, nor did it move for judgment as a matter of law on those grounds.

This course of conduct evinces an intent to proceed under Robinson's "regarded as" case theory and waive any objection based on the 2008 Amendments. Our recent cases on waiver illustrate this point. In *Government of the Virgin Islands v. Rosa*, we found that a defendant's "repeated acquiescence" to erroneous instructions did not rise to the level of a knowing and intentional waiver.[33] But in *United States v. Wasserson*, we concluded that an alleged error was waived when the defendant failed to raise the objection at trial and failed to include it in his post-trial briefing.[34] And, we have long held that when a party jointly recommends a jury instruction, it cannot later complain about that very instruction.[35] Here, First State did not merely fail to object to

_____

instruction as proposed, but I think it would be simpler if the accommodation claim is included. The language about the failure to engage in the four-part test that is used instead of setting out two separate tests. I do think it could be set out with the four-prong test that is identified, I believe. I think we're talking about the same one. I can consult with counsel to make sure we're talking about the same one."

[33] 399 F.3d 283, 292–93 (3d Cir. 2005).

[34] 418 F.3d 225, 239 (3d Cir. 2005). The defendant in that case also failed to raise the issue in his opening brief, which constituted a second ground to find waiver. *Id.* at 240.

[35] *See United States v. Ozcelik*, 527 F.3d 88, 97 n.6 (3d Cir. 2008); *see also United States v. Teague*, 443 F.3d 1310, 1317 (10th Cir. 2006) ("[W]hen a party 'invites' an error by

an instructional error at a charging conference; it played along with a flawed theory of liability throughout the litigation and ultimately endorsed the specific instruction embodying that theory. First State was initially made aware in mid-2016 of the erroneous case theory and did nothing. It did nothing again at the beginning of trial. And finally, it invited the District Court to use the four-part test from *Williams* it now argues is incorrect. Unfortunately for First State, it is simply too little, too late. We therefore find that First State has waived its argument about the effect of the 2008 Amendments and will not review the instruction for plain error.

## 2. The Effect of the Model Jury Instructions

Although, for the reasons stated above, we conclude that First State's argument regarding the reasonable accommodation jury instruction was waived, and thus need not review the instruction for plain error, the parties have devoted considerable attention in their briefing to the significance of the "Model Civil Jury Instructions for the District Courts of the Third Circuit,"[36] which erroneously includes a "regarded as"

---

suggesting that the court take particular action, we can presume that the party has acted voluntarily and with full knowledge of the material consequences.").

[36] Model Instructions 9.1.3 and 9.2.1 have not been updated to reflect the 2008 Amendments to the ADA. Instead, Instruction 9.1.3, which provides the elements for a reasonable-accommodation claim, states that a plaintiff must prove she "has a 'disability' within the meaning of the ADA," and cross-references Instruction 9.2.1 for the definition of "disability." Third Circuit Model Jury Instructions for Employment Claims

instruction, for a plain-error analysis.  In so doing, they expose a fundamental misunderstanding of the import of those instructions and the standard under which they are reviewed. Specifically, Robinson argues that because the flawed instruction appears in what are colloquially known as the "Third Circuit Model Jury Instructions," the District Court could not have "plainly" erred in providing it to the jury.  As Robinson's misunderstanding may be shared by others, we take this opportunity to correct it.

Although entitled "Model Civil Jury Instructions for the District Courts of the Third Circuit," these instructions are drafted not by members of this Court but by the Committee on Model Civil Jury Instructions, consisting of eight district court judges from districts within the Third Circuit, who also collaborate with the Committee's reporters, two law professors.  Although the Committee's work is partially funded by the Third Circuit Court of Appeals, and made available on the Court's website, the website clarifies that "neither the [Third Circuit] Court of Appeals nor any Judge of that Court

---

Under the Americans with Disabilities Act at 17, *available at* https://www.ca3.uscourts.gov/sites/ca3/files/9_Chap_9_2018 _Oct.pdf.  Instruction 9.2.1, in turn, defines "disability" to include "not only those persons who actually have a disability, but also those who are 'regarded as' having a disability by their employer." *Id.* at 48.  The Comment to Model Instruction 9.1.3 refers to *Williams*, and states that "an employee 'regarded as' having a disability is entitled to the same accommodation that he would receive were he actually disabled." *Id.* at 28.  The Comment to Model Instruction 9.2.1 uses the same language. *Id.* at 56.

participate[s] in the drafting of the Model Instructions."[37]
Given the care put into that drafting, we have observed it is
unlikely "that the use of [a] model jury instruction can
constitute error."[38]  True enough, as far as probabilities go, but
we have never held that use of such an instruction cannot
constitute error, and a model jury instruction itself is neither
law nor precedential.  Judges and parties are not free to
incorporate incorrect legal principles simply because there is a
similar error in these or any model jury instructions.  Model
instructions are designed to help litigants and trial courts, not
to replace their shared obligation to distill the law correctly
when drafting proposed jury instructions.  Thus, the existence
of the antiquated model jury instruction here, which regrettably
does not yet reflect the 2008 Amendments, fails to provide a
second justification for our decision to not review the relevant
jury instruction.

---

[37]Introduction to the Model Civil Jury Instructions, *available
at* http://www.ca3.uscourts.gov/sites/ca3/files/INTRODUCTI
ON_2018_for_website.pdf.

[38] *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010).
Admittedly, our language has not always been as precise as it
could be, perhaps contributing to the confusion.  For example,
we have referred to the model instructions on occasion as "our
own."  *Id.*  As indicated, however, the model jury instructions
do not bear the imprimatur of this Court, and when parties use
those instructions, they are reviewed like any other instructions
for their correctness, both on plenary review and plain-error
review.

## B.        The Statutory Damages Cap

First State also argues that the inclusion of the $50,000 statutory damages cap was error. Because First State did not object during trial, we review for plain error.[39]  We agree with the District Court that the instruction was given in error but that such error was harmless.

The pertinent statute, 42 U.S.C. § 1981a(c)(2), provides that a court "shall not inform" the jury of statutory damages limitations.  The District Court's instruction did just that, and the instruction was error.  The question for us, then, is whether that error was so fundamental and prejudicial that a failure to review it would constitute a miscarriage of justice.[40]

First State points to a single Fourth Circuit opinion that lends some credence to its argument that an erroneous instruction on statutory damages *might* constitute error, but falls far short of convincing us that there was plain error in this

---

[39] First State's attorney did raise questions about whether or not the damages cap should be included in the jury instructions. But while First State points this out, it neglects to mention that its attorney did not actually object to the charge, and instead said "I don't know.  I just read it as a rule.  I didn't know if it was the rule to be followed. . . .  I'm comfortable with [the instruction]."   J.A. 184.   When an attorney admits to uncertainty about the propriety of the charge and fails to actually object, the requirements of Rule 51(c) of the Federal Rules of Civil Procedure have not been met, and the instruction is reviewed under the plain error standard.  *See Collins v. Alco Parking Corp.*, 448 F.3d 652, 655–56 (3d Cir. 2006).
[40] *Collins*, 448 F.3d at 656.

17

case.  In *Sasaki v. Class*, an attorney mentioned the damages cap during closing argument.[41]  On review, the Fourth Circuit concluded that "when a jury's damages award itself indicates . . . strongly that the error substantially influenced the jury's verdict, the error cannot be dismissed as harmless."[42]  But there are two key distinctions between *Sasaki* and the instant matter.  First, because the defendant's attorney objected at trial, the error was preserved.[43]  Second, the court found evidence that the jury had responded to the erroneous disclosure by adjusting its award—namely, the jury awarded $50,000 (the highest amount within the damages cap) on the plaintiff's federal claims and $150,000 on her state law claims, despite the fact that "[a]ll of the conduct that formed the basis for [the] state claims also provided the basis for [the] federal claims."[44]  Here, however, First State presents no evidence that learning of the damages cap affected the jury's decisionmaking.  Indeed, the jury awarded Robinson $22,501, which was well below the statutory cap in any event.

While the inclusion of the statutory cap language was error, we cannot see how there was any prejudice to First State as a result, much less prejudice that, if left uncorrected, would work a manifest injustice.  We therefore conclude that there was no plain error.

---

[41] 92 F.3d 232, 235 (4th Cir. 1996).

[42] *Id.* at 237.

[43] *Id.* at 235.

[44] *Id.* at 237.

### C.   Robinson's   Testimony   about   the Commission

Finally, we review First State's objection to Robinson's testimony about the outcome of her complaint before the Equal Employment Opportunity Commission.   We review the District Court's denial of a new trial on these grounds for abuse of discretion.   An abuse of discretion occurs when a lower court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."[45]

First State argues that it was improperly prejudiced by Robinson's disclosure that the Commission ruled in her favor. The District Court agreed that Robinson's testimony was inadmissible and promptly struck it from the record.   She instructed the jury that they were not to consider it in their liability determination. First State does not explain why this course of conduct was insufficient, except that it speculates that Robinson's statement "likely played a part" in the jury's verdict.[46]   For two reasons, we disagree.

First, as the District Court noted, the jury returned a split verdict.   Had the jurors been under the impression that they should find First State liable because the Commission found in Robinson's favor, it does not follow that this prejudice would manifest itself only in the reasonable accommodation verdict and not the termination verdict.

---

[45] *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006) (quoting *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993)).
[46] Appellant's Br. at 22.

Second, we presume that jurors follow the instructions given to them by the trial court.[47]  That presumption is only overcome where there is an "overwhelming probability" that the jury was unable to follow the instructions and a likelihood that the evidence wrongfully admitted was "devastating" to the other party.[48]  There is simply no evidence here that the jury considered Robinson's testimony after receiving the curative instruction, nor is there a likelihood that the consideration of Robinson's testimony would have been "devastating" to First State.  We therefore conclude that the District Court did not abuse its discretion in determining that a new trial was not warranted on these grounds.

## III.   Conclusion

For the foregoing reasons, we affirm the judgment of the District Court.

---

[47] *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014).

[48] *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987); *Bruton v. United States*, 391 U.S. 123, 136 (1968)).